**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SOCIETE POUR L'OEUVRE ET LA MEMOIRE D'ANTOINE DE SAINT EXUPERY - SUCCESSION DE SAINT EXUPERY-D'AGAY, <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, <br><br> Defendants. | Civil Action No. 26-cv-04936 |

**COMPLAINT**

SOCIETE POUR L'OEUVRE ET LA MEMOIRE D'ANTOINE DE SAINT EXUPERY - SUCCESSION DE SAINT EXUPERY-D'AGAY ("Plaintiff"), by and through its undersigned counsel, hereby files this Complaint against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations identified on Schedule A hereto (collectively, "Defendants") and alleges as follows:

I.    **Jurisdiction And Venue**

1.    This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, and this Court may properly exercise personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2) because each of the Defendants directly targets consumers in the United States,

1

including New York, through means including, but not necessarily limited to, the fully interactive commercial internet stores operating under the aliases and/or the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Seller Aliases").

3.     This Court may exercise personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A), which permits service under New York's long-arm statute, C.P.L.R. § 302(a)(1) and 302(a)(3)(i) and (ii), or alternatively pursuant to Fed. R. Civ. P. 4(k)(2), because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in New York and in this Judicial District, derive substantial revenue from business transactions in New York and in this Judicial District, and otherwise avail themselves of the privileges and protections of the laws of New York such that this Court's assertion of jurisdiction over Defendants comports with due process and does not offend traditional notions of fair play and substantial justice.

4.     In addition, Defendants' illegal counterfeiting and infringement actions caused and continue to cause injury to Plaintiff in New York and in this Judicial District such that Defendants should reasonably expect their actions to have consequences in New York and this Judicial District and that they would be required to appear and answer for such actions.

5.     As demonstrated below, Seller Aliases accept orders of counterfeit products from and offer to ship to New York addresses located in this Judicial District:

**[REMOVED FROM PUBLIC DOCKET]**

6.     Moreover, upon information and belief, Defendants are systematically directing and targeting their business activities at consumers in the U.S., including those in New York and in this Judicial District, through accounts (the "User Account(s)") with online marketplace platforms such as PayPal and Shop Pay, as well as other yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective

2

officers, employees, agents, servants, and all persons in active concert or participation with any of them. It is through the Defendants' User Accounts that consumers in the U.S., including New York (and more particularly, in this Judicial District), can view the marketplace accounts that each Defendant operates, communicate with Defendants regarding their listings for counterfeit products, and place orders for, receive invoices for, and purchase counterfeit products for delivery in the U.S., including New York (and more particularly, in this Judicial District), thereby establishing and sustaining regular business with the U.S., including New York (and more particularly, in this Judicial District).

## II.    Parties

7.    Plaintiff SOCIETE POUR L'OEUVRE ET LA MEMOIRE D'ANTOINE DE SAINT EXUPERY - SUCCESSION DE SAINT EXUPERY-D'AGAY is a French entity duly organized and existing under the laws of France, with its principal place of business at 13 Boulevard Edgar Quinet, 75014 Paris, France. Plaintiff operates its global licensing business under the name Le Petit Prince Licensing.

8.    Plaintiff is in the business of developing, marketing, selling, distributing, and licensing THE LITTLE PRINCE branded products. THE LITTLE PRINCE is a novella published in 1943 and written by French author Antoine de Saint-Exupery. The story follows a young prince who visits various planets, including Earth, and addresses themes of loneliness, friendship, love, and loss. Despite its style as a children's book, THE LITTLE PRINCE makes observations about life, adults, and human nature. Translated into 505 distinct languages, THE LITTLE PRINCE is one of the best-selling novels in history. THE LITTLE PRINCE has been adapted to numerous art forms and media, including audio recordings, radio, plays, live stage, film, television, ballet, and

opera. Plaintiff is the official source of authentic THE LITTLE PRINCE branded goods (hereafter,

"THE LITTLE PRINCE Products"):



https://wildwoven.com/collections/the-little-prince?srsltid=AfmBOoqXfLK71GO9c4eHMM6CFZHkqXtTtit0JeqhGBChE_os3f3o3kJo

9.      Plaintiff is the owner of U.S. Trademark Registration Nos. 5,706,587; 5,751,737;

5,706,588; 5,706,589; 2,695,996; 7,452,620; 7,452,618; 7,452,619 and 7,452,621 (collectively,

the "THE LITTLE PRINCE Marks"):

| TRADEMARK | REGISTRATION NUMBER | GOODS AND SERVICES |
| --- | --- | --- |
|  |  | decorative transfers for cosmetic purposes in classes 001, 004, 006, 050, 051, 052<br><br>Tableware, namely, cutlery in classes 023, 028, 044 |

4

| The Little Prince | 5,706,587 | apparatus for recording, transmission or reproduction of sound or images; electronic publications, downloadable, namely, children's books comic books, graphic novels; decorative magnets in classes 021, 023, 026, 036, 038 |
|---|---|---|
| | | Lamps in classes 013, 021, 023, 031, 034 |
| | | jewelry, horological and chronometric instruments; collectible coins in classes 002, 027, 028, 050 |
| | | printed matter, namely, children's books, comic books, graphic novels, coloring books, activity books, exercise books, language learning books being printed matter for instructional or teaching purposes, diaries, photo albums, sticker albums, art prints; stationery; calendars; decals and stickers for use as home decor; posters; prints; stickers; temporary tattoo transfers in classes 002, 005, 022, 023, 029, 037, 038, 050 |
| | | umbrellas in classes 001, 002, 003, 022, 041 |
| | | figurines; statues of wood, wax, plaster or plastic; statuettes of wood, wax, plaster or plastic; works of art, of wood, wax, plaster or plastic in classes 002, 013, 022, 025, 032, 050 |
| | | Wallpaper in the nature of room size decorative adhesive wall coverings in classes 019, 020, 037, 042, 050 |
| | | Games and playthings, namely, toy figures, toys incorporating money boxes in classes 022, 023, 038, 050 |
| | | Paints in Classes 006, 011, 016 |
| | | Bleaching preparations and washing preparations for laundry use; Soaps; essential oils, cosmetics, hair lotions; non-medicated toiletry preparations in Classes 001, 004, 006, 050, 051, 052 |

5

| | | |
|---|---|---|
| Le Petit Prince | 5,751,737 | Tableware, namely, cutlery in Classes 023, 028, 044<br><br>Measuring apparatus and instruments, namely, thermometers other than for medical purposes apparatus for recording, transmission or reproduction of sound or images; computer peripheral devices; decorative magnets; mouse pads; spectacle cases; battery chargers; protective covers and cases for cell phones; protective covers and cases for tablet computers; cell phone straps in Classes 021, 023, 026, 036, 038<br><br>Lamps in Classes 013, 021, 023, 031, 034<br><br>Cycle bells in Classes 019, 021, 023, 031, 035, 044<br><br>Precious metals and their alloys and goods in precious metals or coated therewith, not included in other classes, namely, figurines and works of art; horological and chronometric instruments; collectible coins; jewelry cases being caskets; key rings being trinkets or fobs of precious metal; silver medals; gold medals; watch bands  in Classes 002, 027, 028, 050<br><br>Printed matter, namely, children's books, for embroidery, puzzle books, writing or drawing books, coloring books, exercise books, language learning books being printed matter for instructional or teaching purposes, agendas, diaries, address books, notebooks, invitation cards, collectible trading cards, lithographic prints, art prints; stationery; artists' materials, namely, drawing instruments, and office requisites except furniture, namely, pencil sharpeners, passport holders; Decals and stickers for use as home decor; prints; bookmarks; stickers in Classes 002, 005, 022, 023, 029, 037, 038, 050<br><br>Umbrellas Backpacks; beach bags; handbags; card cases (notecases) calling card and business card cases being notecases; purses; school bags; |

| | | |
|---|---|---|
| | | shopping bags of canvas; pouch baby carriers; pouches made from imitation leather; pouches of textile; tote bags in Classes 001, 002, 003, 022, 041 |
| | | Mirrors, picture frames; goods (not included in other classes) of plastics, namely, figurines; cushions; pillows; statues of wood, wax, plaster or plastic; statuettes of wood, wax, plaster or plastic in Classes 002, 013, 022, 025, 032, 050 |
| | | Household or kitchen containers; beverageware of glassware, porcelain and earthenware not included in other classes; paper towel dispensers in the nature of boxes of metal, for household use; coasters other than of paper or of table linen; tableware, other than knives, forks and spoons, namely, table plates, drinking glasses, tumblers, bowls, cups, mugs, egg cups, tea services, coffee services, place mats, not of paper or textile; bottle gourds; lunch boxes; napkin rings; napkin holders; trays for domestic purposes; cosmetic utensils, namely, cosmetic brushes; soap boxes; isothermic bags, namely, thermal insulated bags for food or beverages; piggy banks, not of metal in Classes 002, 013, 023, 029, 030, 033, 040, 050 |
| | | Clothing, namely, infantwear, nightwear, hosiery, baby layettes for clothing, headscarves, aprons, shawls; footwear; headgear, namely, hats, caps, Bibs, not of paper; Baby bodysuits; hoodies being clothing; scarves; socks; sweatshirts; tops being clothing; t-shirts in Classes 022, 039 |
| | | Wallpaper in the nature of room size decorative adhesive wall coverings in Classes 019, 020, 037, 042, 050 |
| | | (Based on 44(e)) Games and playthings, namely, toy musical boxes, snow globes, toy figures, dominoes, parlor games, toys incorporating money boxes, spinning musical boxes being toys jigsaw puzzles spinning tops, building blocks, building games, puzzles, |

7

| | | |
|---|---|---|
| | | bowling pins, plush toys in Classes 022, 023, 038, 050 |
| | 5,706,588 | Paints in Classes 006, 011, 016<br><br>Soaps, essential oils, cosmetics, hair lotions; shower gels; shampoos, non-medicated toiletry preparations in Classes 001, 004, 006, 050, 051, 052<br><br>Tableware, namely, cutlery; cutlery for use by babies; cutlery for use by children in Classes 023, 028, 044<br><br>Magnets; decorative magnets; sleeves for laptops; mouse pads; spectacle cases in Classes 021, 023, 026, 036, 038<br><br>Strollers in Classes 013, 021, 023, 031, 034<br><br>Horological and chronometric instruments; boxes of precious metal; jewelry boxes; jewelry cases being caskets; clocks; medals; medals made of precious metals; silver medals; gold medals; novelty key rings; collectible coins in Classes 002, 027, 028, 050<br><br>Printed matter, namely, children's books; stationery; artists' materials, namely, drawing instruments, posters; agenda books; activity books; colouring books; notebooks; calendars; address pads in the nature address books; secret notebook; invitation cards; postcards; exercise-book covers; pencils; drawing pencil; color pencils; rubber erasers; lithographs; bookmarks; bookends; paper serviettes; pencil sharpeners; Decals and stickers for use as home decor; prints; passport holders in Classes 002, 005, 022, 023, 029, 037, 038, 050<br><br>Leather and imitations of leather, and goods made of these materials and not included in other classes, namely, suitcases, luggage, pocket wallets; purses; shoulder bags; backpacks; handbags; shopping bags of canvas; toiletry cases sold empty; valises; pouch baby carriers; tote bags in Classes 001, 002, 003, 022, |

8

| | | |
|---|---|---|
| | | 041<br><br>mirrors, photograph frames; cushions; works of art and figurines being statuettes of wood, wax, plaster or plastic; figurines being statuettes of wood resin; figurines being statuettes of cold cast resin; figurines being statuettes of synthetic resin; personal compact mirrors; pillows; fans for personal use, non-electric in Classes 002, 013, 022, 025, 032, 050<br><br>Household or kitchen containers; beverageware of glassware, porcelain and earthenware not included in other classes; table plates; lunch boxes; egg cups; bottle gourds; mugs; trays for domestic purposes; napkin rings; cups; tableware, other than knives, forks and spoons, namely, bowls, tumblers, coffee services, place mats, not of paper or textile; piggy banks; thermally insulated containers for foods and beverages; isothermic bags, namely, thermal insulated bags for food or beverages; cups adapted for feeding babies and children in Classes 002, 013, 023, 029, 030, 033, 040, 050<br><br>Textiles and textile goods, not included in other classes, namely, household linen; shower curtains of textile or plastic; bed linen; table linen, not of paper in Classes 042, 050<br><br>Clothing namely, nightwear, baby layettes for clothing, headscarves, aprons, footwear, bibs, not of paper; bodysuits; caps being headwear; headscarves of silk; t-shirt; infantwear; shawls; socks; scarfs; baby bodysuits; hoodies being clothing; sweatshirts; tops being clothing in Classes 022, 039<br><br>Ornamental novelty badges being buttons; brooches for clothing; hair ornaments in Classes 037, 039, 040, 042, 050<br><br>Wallpaper; Wallpaper in the nature of room size decorative adhesive wall coverings in Classes 019, 020, 037, 042, 050 |

9

| | | Games and playthings, namely, puzzles, bowling pins, balls for games; toy musical boxes; toy figures; spinning tops in Classes 022, 023, 038, 050 |
|---|---|---|
| | 5,706,589 | Brooches being jewelry in Classes 002, 027, 028, 050

Printed matter, namely, art prints; stationery; posters; notebooks; postcards; lithographs; prints in Classes 002, 005, 022, 023, 029, 037, 038, 050

Shopping bags of canvas; toiletry cases sold empty; tote bags in Classes 001, 002, 003, 022, 041

Mirrors, cushions; works of art and figurines being statuettes of wood, wax, plaster or plastic; figurines being statuettes of wood resin; figurines being statuettes of cold cast resin; figurines being statuettes of synthetic resin; personal compact mirrors in Classes 002, 013, 022, 025, 032, 050

Headscarves, headscarves of silk shawls in Classes 022, 039

Brooches for clothing 037, 039, 040, 042, 050

Puzzle boxes; toy figures; dominoes in Classes 022, 023, 038, 050 |
| *Le Petit Prince* | 2,695,996 | Jewelry and Watches in Classes 002, 027, 028, 050

note, writing paper; calendars; photograph albums, boxes for pens, greeting cards, envelopes, pencil holders, postcards, posters in Classes 002, 005, 022, 023, 029, 037, 038, 050

Travel Bags, Wallets, Keyholders, Vanity Cases, Attache Cases, Cardholders, Hand Luggage, Pouches in Classes 001, 002, 003, 022,                                      041

board games, card games, dolls in Classes 022, 023, 038, 050 |

10

| | | |
|---|---|---|
| | 7,452,620 | JEWELRY AND WATCHES in Classes 002, 027, 028, 050<br><br>note, writing paper; calendars photograph albums, boxes for pens, greeting cards, envelopes, pencil holders, postcards, posters in Classes 002, 005, 022, 023, 029, 037, 038, 050<br><br>travel bags, wallets, keyholders, vanity cases, attache cases, cardholders, hand luggage's, pouches in Classes 001, 002, 003, 022, 041<br><br>board games, card games, dolls in Classes 022, 023, 038, 050 |
| The Little Prince | 7,452,618 | Electronic book readers; electronic agendas; electronic pocket translators; baby monitors; baby scales; juke boxes, musical; portable media players; digital photo frames; wearable activity trackers; magnetically encoded blank banking cards for issuance by financial institutions; video game cartridges; headphones; virtual reality headsets; sleeves for laptops; bags adapted for laptops; electronic pens for use with visual display units; usb cables; mobile phone chargers; holders adapted for mobile phones; mobile phone ring holders; mobile phone screen protectors; selfie sticks being hand-held monopods; holograms apparatus; 3D spectacles; smart watches; smart glasses; electronic key fobs being remote control apparatus; teaching robots; telephone apparatus; spectacle cords; contact lenses; telescopes; recorded and downloadable media, namely, audio and visual recordings featuring children's entertainment and educational programs; downloadable music files; downloadable graphics for mobile phones; downloadable ring tones for mobile phones; digital collectibles in the nature of downloadable audio files, image files, video files, and multimedia files containing text, artwork, audio, images and video featuring avatars, fictional characters, cartoon characters, figurines, children's stories, novels, graphic |

11

| | | |
|---|---|---|
| | | novels, comics, drawings, paintings, and music authenticated by non-fungible tokens (NFTs); downloadable virtual goods in the nature of image files of avatars for use in online virtual worlds; downloadable virtual goods, namely, computer software programs featuring in-game resources in the nature of virtual tokens and virtual currency for use in on-line video games and online virtual worlds; downloadable virtual reality game software; augmented reality software, namely, downloadable virtual reality game software; mixed reality software, namely, downloadable virtual reality game software; personal video display devices in the nature of wearable display monitors for viewing digital content including virtual reality, augmented reality and mixed reality content in Classes 021, 023, 026, 036, 038 |
| | 7,452,619 | Electronic book readers; electronic agendas; electronic pocket translators; baby monitors; baby scales; juke boxes, musical; wearable activity trackers; video game cartridges; virtual reality headsets; batteries, electric; battery chargers; covers for tablet computers; protective cases for tablet computers; cell phone straps; bags adapted for laptops; electronic pens for use with visual display units; usb cables; mobile phone chargers; holders adapted for mobile phones; mobile phone ring holders; mobile phone screen protectors; selfie sticks being hand-held monopods; holograms apparatus; 3D spectacles; smartwatches; smart glasses; electronic key fobs being remote control apparatus; teaching robots; spectacle cords; contact lenses; recorded and downloadable media, namely, audio and visual recordings featuring children's entertainment and educational programs; downloadable music files; downloadable graphics for mobile phones; downloadable ring tones for mobile phones; digital collectibles in the nature of downloadable audio files, image files, video files, and multimedia files containing text, artwork, audio, images and video featuring avatars, fictional characters, cartoon characters, figurines, children's stories, novels, graphic |

| | | |
|---|---|---|
| | | novels, comics, drawings, paintings, and music authenticated by non-fungible tokens (NFTs); downloadable virtual goods in the nature of image files of avatars for use in online virtual worlds; downloadable virtual goods, namely, computer software programs featuring in-game resources in the nature of downloadable image files of avatars for use in on-line video games and online virtual worlds; downloadable virtual reality game software; augmented reality software, namely, downloadable virtual reality game software; mixed reality software, namely, downloadable virtual reality game software; personal video display devices in the nature of wearable display monitors for viewing digital content including virtual reality, augmented reality and mixed reality content in Classes 021, 023, 026, 036, 038 |
| Le Petit Prince | 7,452,621 | Electronic book readers; electronic agendas; electronic pocket translators; baby monitors; baby scales; juke boxes, musical; portable media players; digital photo frames; wearable activity trackers; magnetically encoded blank banking cards for issuance by financial institutions; video game cartridges; headphones; virtual reality headsets; sleeves for laptops; bags adapted for laptops; electronic pens for use with visual display units; usb cables; mobile phone chargers; holders adapted for mobile phones; mobile phone ring holders; mobile phone screen protectors; selfie sticks being hand-held monopods; holograms apparatus; 3D spectacles; smart watches; smart glasses; electronic key fobs being remote control apparatus; teaching robots; telephone apparatus; spectacle cords; contact lenses; telescopes; recorded and downloadable media, namely, audio and visual recordings featuring children's entertainment and educational programs; downloadable music files; downloadable graphics for mobile phones; downloadable ring tones for mobile phones; digital collectibles in the nature of downloadable audio files, image files, video files, and multimedia files containing text, artwork, audio, images and video featuring |

| | | avatars, fictional characters, cartoon characters, figurines, children's stories, novels, graphic novels, comics, drawings, paintings, and music authenticated by non-fungible tokens (NFTs); downloadable virtual goods in the nature of image files of avatars for use in online virtual worlds; downloadable virtual goods, namely, computer software programs featuring in-game resources in the nature of virtual tokens and virtual currency for use in on-line video games and online virtual worlds; downloadable virtual reality game software; augmented reality software, namely, downloadable virtual reality game software; mixed reality software, namely, downloadable virtual reality game software; personal video display devices in the nature of wearable display monitors for viewing digital content including virtual reality, augmented reality and mixed reality content in Classes 021, 023, 026, 036, 038 |
|---|---|---|

10. THE LITTLE PRINCE Marks registrations are valid, subsisting, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. § 1065. The registrations constitute prima facie evidence of validity and of Plaintiff's exclusive right to use THE LITTLE PRINCE Marks pursuant to 15 U.S.C. § 1057(b).

11. True and correct copies of the registration certificates for THE LITTLE PRINCE Marks asserted in this action are attached as Exhibit 1.

12. THE LITTLE PRINCE Marks have been the subject of substantial and continuous marketing and promotion by Plaintiff. Plaintiff has and continues to widely market and promote THE LITTLE PRINCE Marks in the industry and to consumers. Plaintiff's promotional efforts include — by way of example, but not limitation — substantial print media, Plaintiff's website and social media sites, and point of sale materials.

13.     Plaintiff has invested substantial time, money, and effort in building up, developing, advertising, and otherwise promoting THE LITTLE PRINCE Marks. As a result, goods and services associated with THE LITTLE PRINCE Marks are recognized and exclusively associated by consumers and the public as being products originating from Plaintiff.

14.     THE LITTLE PRINCE Marks are valid, subsisting, and in full force and effect. The registrations of THE LITTLE PRINCE Marks constitute prima facie evidence of their validity pursuant to 15 U.S.C. §1057(b).

15.     THE LITTLE PRINCE Marks have been used in commerce continuously for more than five consecutive years since being registered and have never been abandoned and are, therefore, incontestable pursuant to 15 U.S.C. §1065.

16.     THE LITTLE PRINCE Marks have achieved the status of famous distinctive marks and, pursuant to 15 U.S.C. §1125(c)(1), Plaintiff is therefore entitled to  injunctive relief against the Defendants without proof of likelihood of confusion, competition or actual economic injury.

17.     Plaintiff has made efforts to protect its interests in and to THE LITTLE PRINCE Marks. No one other than Plaintiff and its licensees are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing THE LITTLE PRINCE Marks without the express written permission of Plaintiff.

18.     Defendants are individuals and business entities who, upon information and belief, reside in various foreign jurisdictions. Defendants conduct business throughout the United States, including within New York and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Seller Aliases. Each Defendant targets the United States, including New York, and has offered to sell and, on information and belief, has sold and continues to sell unauthorized and infringing versions of THE

15

LITTLE PRINCE Products to consumers within the United States, including New York and in this Judicial District.

### III.   <u>Factual Background</u>

19.       Prior to the rise in popularity of anonymous online marketplaces, Plaintiff successfully enforced its intellectual property rights against identifiable infringers and counterfeiters through traditional legal channels. The rise of online retailing, coupled with the ability of e-commerce sites to hide their identities, has rendered measures such as takedown demand procedures seeking the removal of infringing or counterfeit products from the market ineffective and inadequate. Continued use of the traditional enforcement methods would be futile and commercially unreasonable given the sophisticated and coordinated mass counterfeiting operation that is now occurring over the Internet. The aggregate effect of the mass counterfeiting that is taking place has overwhelmed Plaintiff and its ability to police its rights against the hundreds of anonymous defendants that are selling illegal counterfeit and infringing products at prices below the cost of an original, authentic THE LITTLE PRINCE Product:

### PLAINTIFF'S OFFICIALLY LICENSED PRODUCT



https://wildwoven.com/products/the-little-prince-fly-away-quilted-oversized-blanket

## COUNTERFEIT/INFRINGING LISTINGS

## [REMOVED FROM PUBLIC DOCKET]

20.     The exemplar infringing listings depicted above evidence a cooperative counterfeiting network using fake e-commerce storefronts designed to appear to be selling authorized products.

21.     In a clear effort to unlawfully profit through appropriation of the goodwill Plaintiff has amassed through consistent investment in its valuable THE LITTLE PRINCE Marks, Defendants have created numerous Seller Aliases and have designed them to appear to be selling authentic THE LITTLE PRINCE Products.

22.     Plaintiff has suffered and continues to suffer immediate and irreparable harm through loss of control over its valuable intellectual property, diminution of reputation and goodwill, loss of quality control, and impairment of licensing relationships and opportunities, for which there is no adequate remedy at law, thereby necessitating both immediate injunctive relief and monetary damages.

23.     Defendants' systematic and coordinated mass counterfeiting and infringement campaign has caused, and continues to cause, substantial and irreparable harm to Plaintiff and its ability to police and effectively enforce its rights against the hundreds and thousands of anonymous online sellers who are selling counterfeit and infringing products.

24.     Efficient operation of Defendants' unlawful counterfeiting scheme, producing and selling infringing products at prices substantially lower than Plaintiff's costs to produce its authentic goods, could not be accomplished without a high degree of coordination and scale of production among the Defendants to spread costs. As a 2020 Homeland Security report confirms, infringers act in concert through coordinated supply chains and distribution networks to unfairly

compete with legitimate brand owners while generating huge profits for the illegal pirating network.[1]

25.    The Seller Aliases share distinctive identifying characteristics and patterns, including identical design elements and similarities in the unauthorized products offered for sale, demonstrating the existence of a coordinated network of related operations arising from the same series of transactions or occurrences. Defendants deliberately employ sophisticated technological means and aliases to evade detection and liability by systematically concealing their true identities and the full scope and interworking of their illegal network. Despite deterrents such as takedowns and other measures, the use of aliases enables infringers to stymie authorities. *Id.* at 5, 11, 12.

26.    In a 2024 report by the Office of the United States Trade Representative (USTR) titled *2024 Review of Notorious Markets for Counterfeiting and Piracy*, counterfeit and pirated goods from China (including trans-shipments via Hong Kong) accounted for 84% of the value and 90% of the total quantity of counterfeit and pirated goods seized by U.S. Customs and Border Protection (CBP) in 2023. The report notes that in prior years, online piracy cost the U.S. economy an estimated $29.2 billion in lost revenue. The report also highlights how e-commerce and social media platforms facilitate counterfeit sales via online seller listings, influencer promotion, links to fake sites, and social media driven traffic.[2]

27.    Plaintiff's investigation shows that the telltale signs of an illegal counterfeiting and infringement scheme are present in the instant action. For example, Schedule A shows the use of

---

[1] *See* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), at 10, 19.

[2] *See 2024 Review of Notorious Markets for Counterfeiting and Piracy*, 89 Fed. Reg. 66,754 (USTR Docket No. 2024-0013) (Oct. 2, 2024). 2024 Review of Notorious Markets for Counterfeiting and Piracy | U.S. Chamber of Commerce

store names by the Seller Aliases that employ no normal business nomenclature and, instead, appear to be entirely contrived or, if a company name that appears to be legitimate is used, online research reveals that there is no address provided for the company. Thus, the Seller Aliases are deliberately operating deceptive online storefronts specifically designed to mislead consumers by appearing to sell genuine THE LITTLE PRINCE Products, while knowingly selling unauthorized, inferior counterfeit imitations of Plaintiff's THE LITTLE PRINCE Products that illegally use THE LITTLE PRINCE Marks ("Infringing Products").

28.    Screenshot evidence showing each Defendant on Schedule A selling Infringing Products is attached as Exhibit 2.

29.    The Seller Aliases also share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them, and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting and infringement operations.

30.    The Infringing Products for sale through the Seller Aliases bear similarities and indicia of being related to one another, demonstrating that the Infringing Products were manufactured by and sourced from a coordinated network, and that, upon information and belief supported by substantial evidence, Defendants constitute an organized group of infringers operating in deliberate concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products.

31.    The Seller Aliases intentionally conceal their identities and the full scope of their counterfeiting and infringement operations to deter Plaintiff from discovering Defendants' true

identities and the exact interworking of Defendants' illegal operations. Defendants go to great lengths to conceal their identities by using multiple fictitious names and addresses to register and operate their massive network of Seller Aliases.

32. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Use of such Seller Alias registration patterns is one of many common tactics employed by the Defendants to conceal their identities and the full scope and interworking of their massive infringement operation and to avoid being shut down.

33. In addition to operating under multiple fictitious names, Defendants systematically employ a variety of sophisticated tactics specifically designed to evade detection and circumvent intellectual property enforcement efforts. For example, infringers will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Infringers also deliberately structure their shipments in small quantities via international mail as part of a calculated strategy to evade detection and enforcement by U.S. Customs and Border Protection, demonstrating their awareness of and intent to circumvent legal restrictions.

34. U.S. Customs and Border Protection's Fiscal Year 2025 Intellectual Property Rights Seizure Statistics Report reflects a significant shift in the methods used by counterfeiters to import infringing goods into the United States. According to the report, 62% of all intellectual property rights seizures in Fiscal Year 2025 occurred in the Commercial Vessel environment, representing a marked departure from prior years when most seizures involved low-value de minimis shipments. The report further notes that, following the suspension of the de minimis exemption for shipments from China and Hong Kong in May 2025 and its expansion to shipments from all

20

countries in August 2025, counterfeiters have increasingly utilized containerized cargo shipments as an alternative means of importing counterfeit goods into the United States. U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics* FY 2025 at 2[3].

35.     Further, infringers such as Defendants deliberately maintain a complex network of multiple credit card merchant accounts and third-party payment processing accounts, including PayPal, LLC ("PayPal") accounts, strategically concealed behind layers of so-called payment gateways, specifically designed to evade detection and continue their infringing operations despite Plaintiff's legitimate enforcement efforts.

36.     Upon information and belief, Defendants systematically maintain offshore bank accounts and deliberately transfer funds from their PayPal accounts to these offshore accounts outside the jurisdiction of this Court, demonstrating a calculated scheme to shield their illicit profits from legal enforcement and recovery.

37.     Defendants, without any authorization or license from Plaintiff, have knowingly, willfully, and deliberately counterfeited Plaintiff's THE LITTLE PRINCE Marks in connection with the systematic advertisement, distribution, offering for sale, and sale of Infringing Products into the United States, including within this Judicial District of New York, over the Internet. Each Seller Alias offers shipping to the United States, including New York, and, on information and belief, each Defendant has offered to sell Infringing Products into the United States, including New York.

### Count I - Trademark Infringement and Counterfeiting
#### (15 U.S.C. § 1114)

---

[3] *See* U.S. Customs & Border Protection, FY 2025 IPR Seizure Statistics, (May 04, 2026). FY 2025 IPR Seizure Statistics | U.S. Customs and Border Protection

38.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

39.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered THE LITTLE PRINCE Marks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. THE LITTLE PRINCE Marks are inherently distinctive and/or have acquired secondary meaning through Plaintiff's extensive use and promotion. Due to Plaintiff's substantial and continuous investment in quality control, brand management, and product development, consumers have come to expect, rely upon, and associate the highest quality exclusively with Plaintiff and authentic THE LITTLE PRINCE Products offered, sold, or marketed under THE LITTLE PRINCE Marks.

40.     Without Plaintiff's authorization or consent, with actual knowledge or willful blindness to Plaintiff's well-established and prior rights in THE LITTLE PRINCE Marks and with knowledge that Defendants' Infringing Products bear counterfeit marks, Defendants intentionally reproduced, copied, and/or colorably imitated THE LITTLE PRINCE Marks and used spurious designations that are identical with, or substantially indistinguishable from, THE LITTLE PRINCE Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products.

41.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold their Infringing Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with willful and reckless disregard of Plaintiff's exclusive rights in and to THE LITTLE PRINCE Marks through their systematic and deliberate participation in such unlawful activities.

42.     Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of THE LITTLE PRINCE Marks to packaging, point-of-purchase materials, promotions, and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling of Defendants' Infringing Products, which is likely to cause confusion, mistake, or deception among consumers as to the origin, sponsorship, or approval of the Infringing Products, causing consumers to believe that the Infringing Products originate from, are sponsored by, approved by, or are otherwise associated with Plaintiff, thereby obtaining unjust enrichment and profits to which they are not legally entitled.

43.     Defendants' unauthorized use of THE LITTLE PRINCE Marks on or in connection with the Infringing Products was done with notice and actual knowledge that such use was not authorized or licensed by Plaintiff, and with specific intent to unfairly benefit from and damage the substantial and incalculable goodwill Plaintiff has developed in THE LITTLE PRINCE Marks through years of quality control and significant investment.

44.     Defendants' actions constitute willful counterfeiting of THE LITTLE PRINCE Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), thus entitling Plaintiff to relief pursuant to § 1116(d), and §§ 1117(a)-(c).

45.     Defendants' continued, knowing, and willful use of THE LITTLE PRINCE Marks without Plaintiff's consent or authorization constitutes intentional infringement of THE LITTLE PRINCE Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

46.     Plaintiff has no adequate remedy at law, and if these Defendants' actions are not immediately enjoined, Plaintiff will continue to suffer immediate and irreparable harm to its

reputation, market position, and the substantial goodwill associated with THE LITTLE PRINCE Marks, for which there is no adequate remedy at law.

47.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit THE LITTLE PRINCE Products.

## Count II - False Designation of Origin, Passing Off & Unfair Competition
### (15 U.S.C. § 1125(a)/LANHAM ACT § 43(a))

48.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

49.     Defendants' promotion, marketing, offering for sale, and sale of infringing THE LITTLE PRINCE Products has created and is creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Infringing Products by Plaintiff.

50.     By using THE LITTLE PRINCE Marks in connection with the sale of unauthorized Infringing Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the unauthorized Infringing Products.

51.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the unauthorized products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

52.     Upon information and belief, Defendants' aforementioned wrongful actions were done knowingly, deliberately, willfully, and with the intent to cause confusion, to cause mistake, and to deceive the purchasing public, and were undertaken with the intent to trade on the goodwill and reputation of Plaintiff, its THE LITTLE PRINCE Products, and THE LITTLE PRINCE Marks.

24

53.    Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will suffer immediate and irreparable harm to its reputation, business relationships, and the goodwill associated with its brand and trademarks.

## IV.    Prayer For Relief

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)    That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.  using THE LITTLE PRINCE Marks or any reproductions, copies, colorable imitations, or confusingly similar marks thereof in any manner in connection with the distribution, marketing, advertising, promotion, offering for sale, or sale of any product that is not an authorized THE LITTLE PRINCE Product or is not authorized by Plaintiff to be sold in connection with THE LITTLE PRINCE Marks;

b.  passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiff and not approved by Plaintiff for sale under THE LITTLE PRINCE Marks;

c.  committing any acts calculated to cause consumers to believe that Defendants' counterfeit and Infringing THE LITTLE PRINCE Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d.  further infringing THE LITTLE PRINCE Marks and damaging Plaintiff's goodwill;

e.  otherwise competing unfairly with Plaintiff in any manner;

f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, Infringing Products or related products or inventory not authorized by Plaintiff to be sold or offered for sale, and which bear THE LITTLE PRINCE Marks;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Seller Aliases, or any other online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which bear THE LITTLE PRINCE Marks;

2) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with all aspects of the injunctive relief ordered by this Court;

3) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces, social media platforms, Facebook, YouTube, LinkedIn, Twitter, internet search engines such as Google, Bing, and Yahoo, web hosts for the Seller Aliases, and online marketplace account registrars, shall:

a. disable and cease providing services for any accounts through which Defendants engage in the sale of Infringing Products or related products not authorized by Plaintiff, which bear THE LITTLE PRINCE Marks, including but not limited to any accounts associated with the Defendants listed on Schedule A and any affiliated, related, or successor accounts;

    b.  disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Infringing Products or related products not authorized by Plaintiff, which bear THE LITTLE PRINCE Marks; and

    c.  take all steps necessary to prevent links to the Seller Aliases identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Seller Aliases from any search index;

4)    That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' willful and unlawful acts herein alleged, and that the amount of damages for infringement be trebled pursuant to 15 U.S.C. § 1117(b) due to the exceptional nature of this case and Defendants' willful infringement;

5)    In the alternative, that Plaintiff be awarded statutory damages up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(c)(2);

6)    For Judgment in favor of Plaintiff against Defendants that they have:

    a.  willfully infringed Plaintiff's rights in its federally registered trademarks; and

    b.  otherwise injured Plaintiff's business reputation and goodwill by Defendants' acts and conduct set forth in this Complaint;

7)    That Plaintiff be awarded its reasonable attorneys' fees and costs; and

8)    Award such other and further relief, including temporary, preliminary and permanent injunctive relief, as this Court may deem just and proper under the circumstances and as allowed by law.

Dated: June 10, 2026                  Respectfully submitted,

                                          */s/ Shengmao Mu*

27

Shengmao Mu
NY No. 5707021
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY, 10019
Telephone: (917) 858-8018
Email: smu@whitewoodlaw.com

*Counsel for Plaintiff*

## <u>SCHEDULE A</u>

**[REMOVED FROM PUBLIC DOCKET]**